Mr. Justice Olin
delivered the opinion of the court:
In this case a writ of habeas corpus was issued by the justice holding a special term of this court, on the petition of T. F. Gatchel, commanding the “ brothers of Zaulo Poole” to bring the body of the latter befor the justice issuing the writ. The following is a copy of the petition upon which the writ was issued:
“The petition of Theodore F. Gatchel, the nest friend of Zaulo Poole, represents:
“That the said Zaulo Poole is a minor, five years old, and is unlawfully restrained of his liberty by two men, who call themselves the “ Poole brothers,” who compel him to perform acrobatic feats of the most dangerous character, imperiling his life and limbs. Your petitioner, therefore prays that the writ of habeas corpus may issue, commanding the said “Poole brothers” to produce the body of the said Zaulo Poole before this honorable court; and that such further action may be bad in the premises as to your honor may seem just.
“THEODORE F. GATOHEL.”
It does not appear by the return of the marshal, indorsed on the writ, or by the order made by the justice upon the *587 writ being returned, whether the marshal brought Zaulo into «court, or whether he was brought before the justice by the Poole brothers, against whom the writ was issued. It does appear that, on the same day upon which the petition óf Mr. «Gatchel was sworn to and the writ issued and returned to the justice, the following order was made:
“Ordered, this 13th day of November, 1875, that the child •called Zaulo. Poole be committed to the custody of Theodore F. Gatchel until further orders.”
Nothing seems to have been done in this case after the •somewhat summary order of the 13th of November, before quoted, (an order which no one will cite as evidence of the "“law’s delay,”) until the second of December, when a petition was filed for a rehearing of the case. As there had been mo hearing at all, it would have been more properly designated as a petiti on to have the case heard. On the back of that petition for rehearing the following indorsement is made:
“ This petition may be filed as a return to the writ of habeas •corpus,
•“A. WYLIE.
“December 2, 1875.”
From this petition, verified by the oaths of Bichard Edward Poole and Thomas Poole, it appears that they, as well as Zaulo, are natural-born subjects of Her Majesty Victoria, ■Queen of the United Kingdom of Great Britain and Ireland, and that their residence is in Lancashire, England. And after reciting the fact that Theodore F. Gatchel, claiming to be the next friend of said infant, filed a petition in this court, in which it was alleged that the said Zaulo Poole was unlawfully restrained of his liberty, and reciting the material facts in the petition upon which the writ of habeas corpus was issued, they state that they, the petitioners, had produced the body of the said Zaulo Poole in obedience to the writ, •and that thereupon, on the 13th of November, the order was made, as hereinbefore recited, by which the said Zaulo was «committed to the custody of Theodore F. Gatchel. The petitioners then aver, and offer to maintain and prove, as this honorable court may direct, that the said infant, while *588 in tbeir custody, was not illegally restrained of his liberty, nor was he, while in their custody, compelled, or ever permitted, to perform acrobatic or athletic feats to the peril of his life or limbs. On the contrary, they say that the averna ents of said petitioner, while they may have been unintentional, were nevertheless cruel, and absolutely without foundation ; that the athletic exercises said infant was required to perform were entirely safe, and tended to the manly development of his physical nature and to the healthful advantage of his entire system.
They further aver that their profession of acrobatic dancing is not contrary to public morals, and not inhibited by any local laws or ordinances, as they are advised; and they aver, further, that the said infant is attached to them by the strongest ties of fraternal affection, and could not, under the circumstances, not even under the influence of persons pretending to be interested in. his welfare, be induced to leave their custody; and the petitioners further say that their mother and the mother of said infant, whom they allege is the natural and legal guardian of said infant brother, and who is now residing in Lancashire County, in the kingdom of Great Britain, placed the said infant under the custody of his brothers, your petitioners.
They further aver that they are professional acrobats, and intend to visit several of the principal cities of the United States; and they insist that such action on the part of their mother was not an abuse of her maternal or legal right to the custody of said infant; and they are further advised that it was not competent for said justice, in the summary proceedings aforesaid, to deliver said infant into the custody of another, a stranger; that such action was virtually a determination of the right of guardianship to said infant, which is submitted with respect could not be done on habeas corpus. They say that said infant is now in his eighth year; that he is a very intelligent child, capable to form and declare a judicious selection as to who should have the custody of his person.
On the filing of this petition, or, as it was ordered to be called, a return to the writ of habeas corpus, an order seems, to have been made, though I find no evidence of it in the *589 papers of the suit, referring the cause to John J. Johnson, as examiner, to take proofs of the allegations contained in the petition, and of the allegations contained in the return to the writ. Upon the reference to Johnson, some one hundred and fifty pages of testimony, closely written on foolscap paper, were taken and reported to the court. The testimony on behalf of petitioner, Gatchel, appears to have been filed in court ■on the 22d of December, 1875, and the testimony on behalf of the respondents, Poole brothers, on the 27th of December, 1875; and on the same day the following order was entered by the justice:
“This cause coming on to be heard on the pleadings and the testimony therein, in consideration thereof it is, this 27th day of December, 1875, ordered, adjudged, and decreed that the said John Henry Poole be continued in the care and custody of Theodore F. Gatchel until he shall be provided with a permanent home with some suitable person, according to the provisions of law in such eases made and provided.
“ By the court.”
After wading patiently through all the testimony taken in this case and reported to the court, I was a little surprised to find that the testimony in the case was not at all directed to the inquiry whether little Zaulo was restrained of his liberty, but solely to two questions: first, whether his employment as an acrobat was not dangerous to life or limbs; and, second, whether being allowed to exhibit his feats at the Theatre Comique in this city would not endanger his morals. In reference to the first question, quite a number of learned physicians were called as witnesses; and, as sometimes happens, in this case also' disagreed very widely. It was shown by the proofs taken in this case that one of the feats of this little acrobat was to ]ie down upon a carpeted floor, when one of his brothers would take him by one leg, toss him into the air, and he, like a cat, would come down on his feet. Immediately ■upon these facts being proven, a grave inquiry is set on foot whether feats like this in one so young as Zaulo might not .result in hip-disease or something similar, or whether, at all events, it might not retard his physical development. This last inquiry naturally runs into another; that is, at what age the bones and joints of the human frame become so firm that *590 it is sáfe to permit children to engage in any violent exercise,, such as to jump, hop, &c., without damage to their physical system. One other feat young Zaiilo performed, which seems. to have very much endangered his life and limbs in the opinion of Mr. Gatchel, was. in standing upon the shoulders', of his brother and from thence throwing a somersault in the-air and striking on his feet on the shoulders of the brother» This act was regarded as being so difficult to perform that young Zaulo would make several apparently unsuccessful attempts to perform it, and, when, failing to do So, and about to fall on the floor, he would be caught in his brother’s arms, and then attempt to repeat the feat, and when the interest of the audience was sufficiently excited, he would perform the-, .feat without the least apparent difficulty. Mr. Gatchel and some of the spectators did not seem to understand what is. understood to be a kind of stage-trick for exciting the wonder and admiration of the audience, for Zaulo, in his testimony.,, and his brother state that these failures to perform that feat, were intentional, to showthat the successful performance of so-difficult a feat could be accomplished. On the second point,, as to whether Zaulo’s morals were in danger, I think the weight of testimony tends to show that people attending the Theatre-Comique are no more endangered in their morals than when attending the National or Ford’s Opera House.
I am of the opinion that the proceedings in this case were-erroneous from the suing out of the writ down to and including the final order made by the justice who issued it—
1st. Because Mr. Gatchel had no more right to sue out this-writ than any man or woman in this District. He is a mere stranger to the infant, in no way entitled to the custody of it,, and is not responsible for his physical, intellectual, moral, or religious training. All these matters were no concern of his; and the writ, I think, should have been dismissed when it appeared that Gatchel was a mere volunteer, having no right to the custody or control of this infant, and not being invited to sue out this writ by the infant, its parent or guardian, or-any one entitled by law to interfere with its custody. See Rex vs. Clark, 3 Burr, 1363, (opinion by Lord Mansfield;) Ex parte Child, 29 Eng. Law and Equity, 259, (opinion by Ch. B. Jervis;) 13 East, 195, (Hottentot case;) and Linda vs. Hudson, 1 Cush., 385, (Slave case.)
*591 2d. I think it was wholly irregular upon the marshal’s return of service of the writ of habeas corpus, and before requiring or permitting the parties against whom the writ was issued to make a return to the writ, forthwith to order the infant to be delivered into the custody of Mr. Gatchel, the party who. sued out the writ, until the further pleasure of the court.
3d. It is wholly erroneous to suppose that the proceeding in this case is a proceeding in equity. The writ of habeas corpus is a common-law writ, and if it can be issued at all in this District, it may be issued and proceeded with by any one of the five justices composing the court; and if the justice who ordered the writ happens for the time being to be holding the court for hearing of cases in equity, he has the same power, and no more, than the judge holding the criminal or circuit court, or the judge who is holding no court at all; for this writ may be issued by any justice of this court at chambers, and in vacation.
4th. In looking through the voluminous testimony in this-case, I find no evidence proving or tending to prove that the liberty of this boy, Zaulo, was in any way restrained, or that he was compelled to perform any feats which he was not willing and anxious to try to perform. The only thing to the contrary alleged in these papers is the statement of Mr. Gatchel, made in the petition upon which the writ was issued, and the recitals contained in the writ. Mr. Gatchel was put upon the stand before the examiners, and wholly fails to state any fact in confirmation of the statement contained in his petition in that respect. On the other hand, the testimony abundantly shows that the boy was kindly cared for by his brothers, and that he was not compelled or urged to perform any acrobatic feats against his inclination.
5th. I think that the order of the 13th of November, made on the back of the writ, which committed the custody of this boy Zaulo to the petitioner, Gatchel, before any return was made or permitted by the persons against whom the writ was issued, was erroneous and irregular. The infant should have remained in the custody of the marshal, or at least in the custody of some suitable person in no way connected with the controversy arising out of the writ, to be appointed by the court; or he might have been bailed for his appearance from day to day in court until the day of hearing.
*592 6th. I thinkthe justice who issued the writ in this case might well have personally examined Zaulo Poole as to whom he desired to have the custody of him; or, at least, to have appointed some intelligent person or persons to examine him in reference to that subject, and to report to the court as to whether he had intelligence sufficient to make a reasonable selection as to his custodian. It seems now to be the well-settled rule of the law that the apparent intelligence of the child is to be looked at rather than the number of his years. Children have been consulted upon this question from the age of six to fourteen, and whether the court would regard the expressed wishes of such infants would depend upon the reasonableness of such wish and the intelligence exhibited. In this case the petitioner, Gatchel, swears that Zaulo Poole is five years of age, a matter in respect to which he knows unquestionably nothing whatever; and it appears from proof, unquestioned for accuracy, that the child, Zaulo Poole, is in the eighth year of his age, and is a child of intelligence much beyond his years. In confirmation of this it is only necessary to read his answers to the questions put to him on direct and cross-examination, as reportéd'to the court by Examiner Johnson.
7th. It was insisted on the argument of this case before the court in banc that the proceedings on this writ were justified in virtue of the provisions of a Maryland statute passed in 1793, which may be found recited in Thompson’s Digest, pages 77, 78, 79, 80. But Zaulo Poole was not one of the description of persons named in this act; and, besides, the power conferred over the persons named in it was not conferred upon the court of chancery or any of the superior courts of law, but was conferred solely upon the judges of the orphans’ court of that State and upon justices of the peace. But in a case like the present, neither the orphans’ court nor the justices of the peace had power or authority to seize upon, bind, or consign the custody of an infant in the condition of Zaulo Poole to any person whatsoever.
This infant, Zaulo Poole, or rather John Henry Poole, (which is his true name,) is a British-born subject, owing no allegiance to this country, and, so long as he yields obedience to our laws, and violates no provision thereof, and does not become a charge upon the public support and maintenance, *593 there is no statutory provision, so far as I am aware, and certainly no rule of the common law, by which such infant may be brought before a court of equity on a writ of habeas corpus, or be seized upon a petition or complaint, and be brought before a judge of the orphans’ court or a justice of the peace, and thereupon be bound out to servitude until he attains the age.of twenty-one years. If the principle which I have endeavored to maintain is not correct, it seems to me logically to follow that Mr. G-atchel or any one else may sue out a writ of habeas corpus against any parent or guardian of an infant child whenever such parent or guardian allows such infant child to indulge in such exercises as may injure his physical development or attend on such places of amusement as may endanger his morals; that this court may take such infant child away from its parents or guardian and bind it to servitude during its minority.
The first great canon for human conduct is be obedient to Jaw, human and divine ; and the next one is, mind your own business. Those who are actuated by benevolent prepense are sometimes as troublesome in this world as those actuated by malice aforethought.
I think the writ in this case should be dismissed, and Za-ulo be allowed to go wherever he pleases.
MacArthur, J.
I think the writ must be dismissed. There is no proof that the boy Zaulo is restrained of his liberty. Indeed, he is anxious to return to the care of his brothers, to whom he seems much attached. They are the only relatives in this country to whom he can look for protection. The writ of habeas corpus confers no jurisdiction to provide for the guardianship of infants or for their education and instruction in correct habits of life. The court of chancery in a proper case will interfere to protect them from cruelty or from immoral influences, and may even deprive parents of the care of then-own children for this purpose when their estate is involved. In this proceeding, however, we cannot exercise this jurisdiction. The proceeding is misconceived. It is assumed to be a proceeding in chancery, which it is not, and it must, therefore, be set aside, and the boy left to return to his brothers, if such is his wish.